UNITED STATES, Appellant,

v.

Brad L. MURAWSKY, Private (E–1), U. S. Marine Corps., Appellee.

No. 36,826.

NCM 78 0580.

U. S. Court of Military Appeals.

Oct. 1, 1979.

For Appellee: *Lieutenant Lawrence W. Muschamp, JAGC, USN* (argued).

For Appellant: *Major D. A. Higley, USMC,* (argued); *Commander T. C. Watson, Jr., JAGC, USN* (on brief).

Opinion of the Court

PERRY, Judge: *

The appellant was convicted by special court-martial upon charges alleging larceny and wrongful alteration of travel orders, in violation of Articles 121 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 934, respectively. He was sentenced to a bad-conduct discharge, confinement at hard labor for 4 months, and forfeiture of $240 pay per month for 4 months. The convening authority approved the trial results except for the confinement at hard labor, which he disapproved. A divided United States Navy Court of Military Review set aside the findings and sentence and dismissed the charges based on *United States v. Russo,* 1 M.J. 134 (C.M.A.1975), finding that the court lacked jurisdiction over the appellant resulting from recruiter misconduct in his enlistment.

* Judge Matthew J. Perry took final action in this case prior to his resignation as a judge of this Court pursuant to his appointment and confirmation as a United States District Judge for the District of South Carolina.

The Judge Advocate General of the Navy certified the case to this Court for further review pursuant to Article 67(b)(2), UCMJ, 10 U.S.C. § 867(b)(2), for a determination concerning the correctness of that ruling. We conclude that, upon the facts of this case, the appellant was not disqualified to enlist in the United States Marine Corps. The court-martial therefore possessed the requisite jurisdiction over the appellant. We reverse.

The facts, as found by the Court of Military Review, reflect that in August 1975, the appellant visited the Racine, Wisconsin, Marine Corps Recruiting Station for the purpose of enlisting in the Marine Corps. While completing the enlistment application, the appellant answered "yes" to the question designed to establish whether he had a prior history of civil offenses. When the recruiter inquired of the appellant as to the nature of the offenses, the latter indicated that he had been convicted of "felony, burglary" and had been "sentenced to six months probation." Thereupon, the recruiter refused to process the enlistment papers but he suggested that the appellant go to Chicago, Illinois, to enlist and admonished him not to tell them anything about the conviction. The appellant followed this advice and, in due course, was enlisted in the Marine Corps through the Chicago recruiting office following a police background check with the Racine, Wisconsin, law enforcement authorities.

■ The enlistment of an ineligible applicant is void *ab initio* if effected through the deliberate violation of recruiting regulations by the recruiter. *United States v. Hampton*, 7 M.J. 284 (C.M.A.1979); *United States v. Wagner*, 5 M.J. 461 (C.M.A.1978); *United States v. Russo, supra* ; *see* Article 84, UCMJ, 10 U.S.C. § 884. Implicit in this precept is the conclusion that a void enlist-

ment results from a combination of two factors: a recruit who was ineligible because his enlistment was prohibited by law, regulation, or order [*United States v. Hampton, supra* ]; and a recruiter who assists that enlistment via his deliberate violation of recruiting regulations [*United States v. Wagner, supra,* and *United States v. Russo, supra* ]. Thus, the first step in any analysis in this area is to determine whether an accused was ineligible to enlist in light of applicable laws and regulations.

■ The appellant maintains that he falls squarely within this area of ineligibility because his civilian misdeeds required that the recruiter obtain a moral waiver for him from higher Marine Corps authorities [1] and that that waiver was never obtained. As is pointed out in paragraph 2111.3 of the Military Personnel Procurement Manual (MPPM) [2]: "Civil conviction or adjudication as a youthful offender, juvenile delinquent or other disposition by civil authorities is not in itself a bar to enlistment if the applicant is otherwise eligible." However, a moral waiver is required by an appropriate Marine Corps authority if "the applicant has had an adverse adjudication as juvenile or when criminal charges have resulted in conviction or action by a court tantamount to a finding of guilty." [3] *Id.* Conversely, no moral waiver is required "when charges were dismissed without an adjudication of guilt or an adverse juvenile adjudication." *Id.*

Documents admitted at trial reflect that a Petition for Determination of Status filed by the Chief Juvenile Court Worker for Racine County asked the Juvenile Court of that county to adjudge the appellant as a delinquent upon allegations that the appellant had burglarized a home and had carried a concealed weapon. However, the

---

1. Had the appellant, as he told the Racine recruiter, been convicted of burglary, the moral waiver could only have been obtained from the Commandant of the Marine Corps. *See* paras. 2111.2.d(6) and 2111.3.a, Military Personnel Procurement Manual (MPPM).

2. Unless otherwise noted, references to the MPPM are to that version in effect at the time

of the appellant's enlistment, promulgated June 2, 1972, and amended December 19, 1972.

3. To the end of effectuating this policy pronouncement, recruiters are specifically instructed to question applicants concerning any civil court convictions or adverse juvenile adjudications. Para. 2111.1.a, MPPM.

court specifically entered *no finding* on these charges while, nonetheless, placing the appellant under the supervision of his parents and the county probation department under the conditions that until his 18th birthday he must go to school or work, obey his parents and the laws of the state, and take care of his health and morals.[4] Through a stipulation of testimony, the judge who disposed of the appellant's case in juvenile court testified that there was no finding entered in the appellant's juvenile proceeding, which meant that the appellant "does not now have nor ever did have a criminal conviction in the Juvenile Court. There was no conviction." [5]

█ We believe that the tenor of paragraph 2111, MPPM, clearly contemplates a requirement for a moral waiver only when there had been some form of judicial *finding* adverse to the applicant. *See* para. 2111.3, MPPM. In the absence of some type of finding having been entered, no competent authority has determined that an individual ever did anything unlawful,[6] which is the thrust of the moral waiver provisions recited above.[7] As no findings of any sort ever were entered against the appellant arising from the charges alleged against him in juvenile court,[8] the moral waiver requirements of paragraph 2111, MPPM, did not apply to his application and, thus, his enlistment without a moral waiver was not prohibited by law. The conclusion is inescapable that, regardless of the actions of the Racine recruiter, there was no defect in the appellant's enlistment. Therefore, we answer the certified question in the negative.

The decision of the United States Navy Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Navy for remand to the Court of Military Review for further review pursuant to Article 66(c), UCMJ, 10 U.S.C. § 866(c).

Chief Judge FLETCHER and Judge COOK, concur.

---

4. The appellant reached his 18th birthday shortly before enlisting.

5. The stipulation indicated that this was the usual procedure for a first offense and that, if any subsequent offense had occurred, findings then would have been entered on the initial charges.

6. Otherwise, for all anyone is to know, any findings might well reflect in favor of the juvenile.

7. We note that paragraph 2012.2.a(1) of the current version of the MPPM defines "adverse juvenile adjudication" as a "determination by a judge or jury, in juvenile court proceedings, that the juvenile is guilty of, or that the individual committed, the acts alleged . . . and that the determination was recorded in the court's records . . . [r]egardless of whether sentence was then imposed, withheld, or suspended, and . . . [r]egardless of subsequent proceedings in the same case to delete an initial determination of guilt from court records . . . ." This makes clear what we believe to be implicit in the provisions of paragraph 2111 of the MPPM in effect at the time of the appellant's enlistment.

8. We are unpersuaded that the court's placing the appellant under supervision of his parents and a probation officer implies an adverse finding. Not only was there *expressly* no finding entered, but the conditions of the supervision amounted to no more than an admonition to be a productive, law-abiding citizen.