UNITED STATES, Appellee,

v.

Private E–1 Randolph R. QUINTAL, Jr., SSN 008–48–1960, United States Army, Appellant.

CM 438835.

U. S. Army Court of Military Review.

18 Sept. 1980.

---

⸱ Colonel Edward S. Adamkewicz, Jr., JAGC, Major Lawrence D. Galehouse, JAGC, and Captain Alan W. Schon, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major Ted B. Borek, JAGC, Captain Brian X. Bush, JAGC, and Captain Michael C. Chapman, JAGC, were on the pleadings for appellee.

Before JONES, GARN and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

GARN, Judge:

The appellant was convicted by a general court–martial of larceny, housebreaking, disrespect toward an officer, and offering violence against and assaulting an officer, in violation of Articles 121, 130, 89, and 90, respectively, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 930, 889 and 890. He was sentenced to a bad–conduct discharge, confinement at hard labor for two years, and forfeiture of all pay and allowances.

At his trial the appellant moved to dismiss the charges against him on the basis that, because he was ineligible to enlist and his recruiter participated in a deception with respect to his lack of eligibility, he was not subject to the jurisdiction of the court–martial to which the charges against him had been referred.

He presented evidence establishing that at the time of his enlistment he was ineligible to enlist because he was a person with prior service who had neither completed high school nor successfully passed the required GED tests.[1] The appellant also presented evidence tending to show that his recruiter engaged in misconduct, possibly constituting a violation of Article 84, UCMJ, 10 U.S.C. § 884,[2] by inducing the

1. Army regulations in effect at the time of the appellant's enlistment required that a prospective enlistee with prior service have completed high school or have demonstrated what is known as a General Education Development (GED) equivalent to completion of high school in order to be eligible for enlistment. No waivers would be considered. Army Regulation No. 601–210, Regular Army Enlistment Program, paragraph 2–2 and table 2–1 (C6, 28 July 1976). It appeals that had the appellant not had prior service he would have been eligible to enlist. In view of the basis for our decision, we need not determine whether the appellant's regula-

tory disqualification was the type of disqualification that would bar his being tried by court–martial because of the Court of Military Appeal's holding in *United States v. Russo*, 1 M.J. 134 (C.M.A.1975). *See United States v. Stone*, 8 M.J. 140 (C.M.A.1979).

2. If the appellant's recruiter engaged in the misconduct claimed by the appellant, he participated in effecting the appellant's enlistment without knowing whether or not the appellant was eligible. Article 84, UCMJ, 10 U.S.C. § 884, prohibits à recruiter from effecting an enlistment "of any person who is known to him to be ineligible for that enlistment ..."

appellant to sign a document stating that the appellant had "successfully completed GED", and by then signing the document falsely certifying that he, the recruiter, had contacted a named school official and verified the appellant's successful completion of GED. The recruiter admitted that he prepared the document, obtained the appellant's signature, and certified the verification.

According to the recruiter, the appellant told him that he had passed the GED tests and provided the name and telephone number of the school official who could verify his assertion. The recruiter testified that he dialed the number given to him by the appellant, that the person who answered stated that she was the school official named by the appellant, and that she stated that the appellant had passed the GED tests that morning.

The appellant testified that the recruiter never made the telephone call, and his counsel presented by stipulation, the testimony of the school official to the effect that she could not remember receiving a call from the recruiter but if she had she would have told him that appellant had not passed his GED.

The military judge denied the motion to dismiss without expressly stating the reasons for his ruling. It appears, however, that the military judge determined that the recruiter's testimony concerning the telephone call was credible and therefore he had not engaged in misconduct warranting dismissal of the charges. *See United States v. Wagner*, 5 M.J. 461 (C.M.A.1978); *United States v. Valadez*, 5 M.J. 470 (C.M.A.1978); *United States v. Harrison*, 5 M.J. 476 (C.M.A.1978).

Before us the appellant argues that, considering all the evidence, the recruiter's testimony that he contacted a person purporting to be a school official by telephone, and was told that the appellant had passed his

GED tests, is incredible. The appellant further posits that, if we reject that testimony, he was not amenable to the jurisdiction of the court–martial that convicted him because the remaining evidence establishes recruiter misconduct (*i. e*., falsely certifying the telephone verification that the appellant had successfully completed GED) which, in accordance with the doctrine established in *United States v. Russo*, 1 M.J. 134 (C.M.A.1975), vitiates the validity of his enlistment, which is the prerequisite for military jurisdiction over him.

In *Russo*, the Court of Military Appeals held that, when a recruiter violates Article 84, UCMJ, 10 U.S.C. § 884, in effecting an enlistment, the enlistment is void. The Court also held, in *Russo*, that in such a situation the Government is estopped, on the basis of "fairness", from establishing jurisdiction by proving a constructive enlistment. We have concluded that, regardless of the validity of the appellant's enlistment at the time he enlisted, there is sufficient evidence of a constructive enlistment and that the *Russo* doctrine no longer precludes our ultimately finding the proper exercise of court–martial jurisdiction over the appellant on that basis.

The holding in *United States v. Russo*, known as the *Russo* doctrine, obviously affects the issue of court–martial jurisdiction over persons. *Russo* doctrine does not, however, stand for the proposition that the military never has court–martial jurisdiction over persons whose enlistments are effected by recruiter misconduct; rather, the doctrine precludes the Government from proving jurisdiction by estopping the Government from showing even a constructive enlistment. As Judge Cook succinctly pointed out, the *Russo* doctrine "is a doctrine imposed by this Court to enforce public policy against fraudulent enlistments where the recruiter participates in the deception." *United States v. Torres*, 7 M.J.

Whether the recruiter's claimed misconduct amounted to a violation of Article 84 so as to warrant application of the doctrine announced in *United States v. Russo*, 1 M.J. 134 (C.M.A. 1975), is another issue we need not address in

view of the basis for our decision. *Compare United States v. Stone*, 8 M.J. 140 (C.M.A. 1979), *with United States v. Valadez*, 5 M.J. 470 (C.M.A.1978).

102, 107 (C.M.A.1979) (Cook, J., concurring). Then Chief Judge Fletcher, the author of *Russo*, indicated that the basis for the *Russo* doctrine was the Court of Military Appeal's perception of "an expression of the public policy by Congress ..." *United States v. Valadez, supra,* at 474.

It is clear now that Congress does not agree with the Court of Military Appeal's perception of Congressional policy. Congress recently amended Article 2, Uniform Code of Military Justice, 10 U.S.C. § 802, by adding two new subsections, (b) and (c), to that Article. Subsection (c) provides:

(c) *Notwithstanding any other provision of law,* a person serving with an armed force who—

(1) submitted voluntarily to military authority;

(2) met the mental competency and minimum age qualifications of sections 504 and 505 of this title at the time of voluntary submission to military authority;

(3) received military pay or allowances; and

(4) performed military duties;

is subject to this chapter until such person's active service has been terminated in accordance with law or regulations promulgated by the Secretary concerned. (Pub.L.No.96–107, § 801(a)(2), 93 Stat. 810 [emphasis added].)

The Senate Report concerning the amendment contains the following:

The committee strongly believes that [the *Russo* doctrine serves] no useful purpose, and severely undermine[s] discipline and command authority. No military member who voluntarily enters the service and serves routinely for a time should be allowed to raise for the first time after committing an offense defects in his or her enlistment, totally escaping punishment for offenses as a result. That policy makes a mockery of the military justice system in the eyes of those who serve in the military services.

. . . . .

... This amendment [subsection (c)] thus overrules those portions of [Court of Military Appeals cases including *United States v. Russo, supra* ] which held that improper Government participation in the enlistment process estops the Government from asserting constructive enlistment. It also overrules that portion of *United States v. Valadez,* 5 M.J. 470, 473 (C.M.A. 1978) which stated that an uncured regulatory enlistment disqualification, not amounting to a lack of capacity or voluntariness, prevented application of the doctrine of constructive enlistment. (S.Rep. No.96–197, 96th Cong., 1st Sess. 121, 122 *reprinted in* [1979] U.S.Code Cong. & Ad. News 1827, 1828.)

█ The appellant argues that we should apply the *Russo* doctrine rather than the recent amendment to Article 2 of the Code because that amendment did not become effective until after the conclusion of his trial. His position is anomalous. He asks that we apply a doctrine ostensibly designed to further a policy expressed by Congress, even though Congress has explicitly rejected that doctrine. Moreover, that doctrine, insofar as it prevents the Government from establishing jurisdiction by showing a constructive enlistment, is a prophylactic policy rule, devised by the Court of Military Appeals, for the purpose of guarding against recruiter misconduct, rather than a legal principle found by that Court in the Constitution, any statute, or legal precedent. The general rule, which we deem applicable to this case, "is that an appellate court must apply the law in effect at the time it renders its decision." *Thorpe v. Housing Authority of Durham,* 393 U.S. 268, 281, 89 S.Ct. 518, 525, 21 L.Ed.2d 474 (1969).

█ Applying the law now in effect, we have carefully considered the evidence and concluded that, pursuant to the provisions of Article 2(c), Uniform Code of Military Justice, 10 U.S.C. § 802(c), the appellant is, and was at the time of his trial, subject to the Uniform Code of Military Justice, and that the court–martial that tried and convicted him had jurisdiction over him regardless of the claimed misconduct of his recruiter.

**536**

The findings of guilty and the sentence are affirmed.

Judge LEWIS concurs.

JONES, Senior Judge, concurring:

I concur with Judge Garn. However, as to his Footnotes 1 and 2, I believe the holding in *United States v. Stone*, 8 M.J. 140 (C.M.A.1979), has modified *United States v. Russo*, 1 M.J. 134 (C.M.A.1957), to the extent that neither the regulatory disqualification nor the recruiter misconduct would preclude the showing of a constructive enlistment here.